[No. 3171.   Decided December 4, 1899.]

FRED D. BARTO, *as Receiver of the Bank of Puyallup, Respondent,* v. M. A. STEWART *et al., Executors of the Estate of J. P. Stewart, deceased, Appellants.*

EXECUTORS AND ADMINISTRATORS — PRESENTMENT OF CLAIMS — CON-
TINGENT AND UNMATURED CLAIMS.

Under the statutes of this state governing claims against de-
cedents' estates, action on any claim is barred, if it has not been
presented to the executor or administrator within one year after
published notice of the appointment of such personal representa-
tive, although such claim at the time within which it should have
been presented may not have been due, or may in fact have been
wholly contingent.

Appeal from Superior Court, Pierce County.—Hon.
JAMES A. WILLIAMSON, Judge.   Reversed.

*Remington & Reynolds,* for appellants:

(1.)   The action is barred by the three years limita-
tion of Bal. Code, § 4800, subd. 3.   The right of action
accrues against stockholders immediately upon the *de facto*
insolvency or any other equivalent default of the company.
*Hawkins v. Furnace Co.,* 40 Ohio St. 507; *Barrick v.
Gifford,* 47 Ohio St. 181 (24 N. E. 259, 21 Am. St. Rep.
798); *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala.
401 (5 South. 120, 122); *First National Bank v. Greene,*
64 Iowa, 445 (17 N. W. 86, 20 id. 754); *Commonwealth
v. Cochituate Bank,* 3 Allen, 42; *Baker v. Atlas Bank,* 9
Metc. (Mass.) 182; *Younglove v. Kelly Island Lime Co.,*
49 Ohio St. 663 (33 N. E. 234); *Terry v. Tubman,* 92
U. S. 156 (23 L. ed. 537); *Terry v. Anderson,* 95 U. S.
628 (24 L. ed. 365); *Carrol v. Green,* 92 U. S. 509 (23
L. ed. 738); *Freeland v. McCullough,* 1 Denio, 414 (43
Am. Dec. 685); *Hardman v. Sage,* 124 N. Y. 25, 32 (26

N. E. 354); *State v. Union Stock Yards State Bank,* 70 N. W. 752; *State Savings Association v. Kellogg,* 52 Mo. 583, 588; *Gibbs v. Davis,* 27 Fla. 531 (8 South. 633, 635); *Todhunter v. Randall,* 29 Ind. 275; *Sleeper v. Norris,* 53 Pac. 757; *Hicks v. Burns,* 38 N. H. 141; *New England Commercial Bank v. Stockholders,* 6 R. I. 154, 187 (75 Am. Dec. 688); *Penniman v. Briggs,* 1 Hop. Ch. 300; *Briggs v. Penniman,* 8 Cow. 387 (18 Am. Dec. 454); *Bank of Poughkeepsie v. Ibbotson,* 24 Wend. 473; *Shellington v. Howland,* 53 N. Y. 371; *Hunting v. Blun,* 143 N. Y. 511 (38 N. E. 716); *Hirshfeld v. Bopp,* 39 N. E. 817, 820; *Flash v. Conn,* 107 U. S. 371 (27 L. ed. 966); *McKusick v. Seymour,* 50 N. W. 1114; *Crease v. Babcock,* 10 Metc. 525, 567; *Grew v. Breed,* 10 Metc. 569; *Stewart v. Lay,* 45 Iowa, 604; *Godfrey v. Terry,* 97 U. S. 171 (24 L. ed. 944); *Long v. Bank of Yanceyville,* 90 N. C. 405; *In re Empire City Bank,* 4 Abb. Pr. 118; *Franklin Savings Bank v. Bridges,* 8 Atl. 611; *Garesche v. Lewis,* 93 Mo. 197 (6 S. W. 54); *Hospes v. Northwestern Mfg. Co.,* 50 N. W. 1117, 1122; *Webber v. Hovey,* 65 N. W. 619; *Payne v. Bullard,* 23 Miss. 88 (55 Am. Dec. 74).

The elements of any cause of action are (1) a right possessed by the plaintiff; (2) an infringement of such right by, or the *delict* of the defendant. *Atchison, T. & S. F. R. R. Co. v. Rice,* 36 Kan. 600 (14 Pac. 229); *Rodgers v. Association,* 17 S. C. 410; *Veeder v. Baker,* 83 N. Y. 156, 160; Pomeroy, Remedies (1st ed.), § 452.

When these two elements co-exist, "arise, happen or come to pass," they are combined and a cause of action has accrued. The insolvency of the corporation is a general default on all obligations,—the "delict" of the defendant,—which gives an immediate right of action against the corporation as the principal debtor. *Mitchell v. Beckman,* 28 Pac. 110; *Meadowcroft v. People,* 45 N. E. 991, 999 (54 Am. St. Rep. 447, 35 L. R. A. 176); *People v.*

*Security Life Ins., etc., Co.,* 78 N. Y. 114, 125 (34 Am. Rep. 522); *Davis v. Industrial Mfg. Co.,* 19 S. E. 371, 373 (23 L. R. A. 322); *Watson v. Phoenix Bank,* 8 Metc. 217 (41 Am. Dec. 500); *New York Life Ins. Co. v. Statham,* 93 U. S. 24 (23 L. ed. 789).

And treating a stockholder as surety, the cause of action accrues against a surety upon the default of the principal. *Spokane County v. Prescott,* 19 Wash. 418 (53 Pac. 661, 67 Am. St. Rep. 733).

The familiar rule that the primary or corporate assets must be first exhausted does not affect the accrual of the right of action, but only the equitable application of the funds. This rule is expressly recognized in many of the above authorities, and none of the cases declaring the "secondary theory" extend its operation to bar or to postpone the right of action. *Commonwealth v. Cochituate Bank,* 3 Allen, 42; *Hawkins v. Furnace Co.,* 40 Ohio St. 507; *Younglove v. Kelly, etc., Co.,* 49 Ohio St. 663; *Hirshfeld v. Bopp,* 39 N. E. 817; *First National Bank v. Greene,* 64 Iowa, 445; *Stewart v. Lay,* 45 Iowa, 604; *Grew v. Breed,* 10 Metc. 569; *Hicks v. Burns,* 38 N. H. 141; *New England Commercial Bank v. Stockholders,* 6 R. I. 154 (75 Am. Dec. 688); *Gibbs v. Davis,* 27 Fla. 531; *Wright v. McCormack,* 17 Ohio St. 87; *Perry v. Turner,* 55 Mo. 418, 425; *McClaren v. Franciscus,* 43 Mo. 452; *Patterson v. Wyomissing Mfg. Co.,* 40 Pa. St. 117; *Appeal of Means,* 85 Pa. St. 75; *Peck v. Miller,* 39 Mich. 594; *Hanson v. Donkersley,* 37 Mich. 184; *Ladd v. Cartwright,* 7 Ore. 329; *Howell v. Manglesdorf,* 5 Pac. 759; *Middleton Bank v. Magill,* 5 Conn. 28; *State v. German Savings Bank,* 70 N. W. 221; *Corning v. McCullough,* 1 N. Y. 47 (49 Am. Dec. 287); *Harper v. Union Mfg. Co.,* 100 Ill. 225; *Willis v. St. Paul Sanitation Co.,* 50 N. W. 1110 (16 L. R. A. 281).

Another reason why the right of action must accrue before the assets are exhausted is that it is not the policy of the law to put it within the power of a party to thus extend the statute of limitations. *Spokane County v. Prescott,* 19 Wash. 418 (53 Pac. 661, 67 Am. St. Rep. 733); *Spinning v. Pierce County,* 20 Wash. 126; *Baker v. Atlas Bank,* 9 Metc. 182; *Schriber v. Town of Richmond,* 73 Wis. 5, 11; *Curran v. Witter,* 68 Wis. 16 (60 Am. Rep. 827); *Baxter v. State,* 17 Wis. 588; *Arapahoe v. Albee,* 38 N. W. 737 (8 Am. St. Rep. 202); *Brehm v. New York,* 104 N. Y. 186 (10 N. E. 158); *Hostetter v. Hollinger,* 117 Pa. St. 606; *Dorland v. Dorland,* 66 Cal. 189; *Prescott v. Gonser,* 34 Iowa, 175; *Beecher v. Clay County,* 52 Iowa, 140 (2 N. W. 1037); *Wheeler v. Warner,* 47 N. Y. 519 (7 Am. Rep. 478); *Nelson v. Commissioners,* 105 Ind. 287 (4 N. E. 703); *Litchfield v. McDonald,* 35 Minn. 167 (28 N. W. 191); *Palmer v. Palmer,* 36 Mich. 489 (24 Am. Rep. 605); *Baker v. Johnson County,* 33 Iowa, 151.

Where certain steps in the control of a party must be taken before an action can be brought, they must be taken at least within the period of the statute barring the action. *Atchison, T. & S. F. R. R. Co. v. Burlingame Township,* 36 Kan. 628 (14 Pac. 271, 59 Am. Rep. 578); *Ball v. Keokuk & M. Ry. Co.,* 62 Iowa, 751 (16 N. W. 592); *Wright v. Paine,* 62 Ala. 340 (34 Am. Rep. 24); *Codman v. Rogers,* 10 Pick. 111, 119; *Pittsburgh & C. R. R. Co. v. Byers,* 32 Pa. St. 22; *Morrison v. Mullin,* 34 Pa. St. 12.

The proper remedy is by a proceeding to marshal the assets and charge the stockholders in a single suit, and this can be done before exhausting assets, by bringing the stockholders into the sequestration proceeding already pending. *Wilson v. Book,* 13 Wash. 676; *Watterson v. Masterson,* 15 Wash. 511; *State v. Union Stock Yards Bank,* 70 N. W. 752; *Arthur v. Willius,* 44 Minn. 409 (46 N. W. 851); *Farmers' Loan & Trust Co. v. Funk,* 68

N. W. 520; *Cushing v. Perot,* 34 Atl. 447 (52 Am. St.
Rep. 835, 34 L. R. A. 737); *Patterson v. Wyomissing
Mfg. Co.,* 40 Pa. St. 122; *Hurlbut v. Marshall,* 62 Wis.
590, 604; *Ballin v. Loeb,* 78 Wis. 404; *Ford v. Planking-
ton Bank,* 87 Wis. 363; *Hirshfeld v. Bopp,* 39 N. E. 817;
*Barrick v. Gifford,* 47 Ohio St. 181 (21 Am. St. Rep.
798); *Crease v. Babcock,* 10 Metc. 525; *Baker v. Atlas
Bank,* 9 Metc. 182; *McKusick v. Seymour,* 50 N. W. 1114.

This power to bring in the stockholders exists at com-
mon law, without any statutory authority for the purpose,
as a distinct exercise of equitable jurisprudence, and prior
to the exhaustion of corporate assets. *Adler v. Milwaukee
Patent Brick Co.,* 13 Wis. 57, 64; *Mann v. Pentz,* 3 N. Y.
415, 422; *Vose v. Grant,* 15 Mass. 505, 522; *Matter of
Empire City Bank,* 18 N. Y. 199; *Pfohl v. Simpson,* 74
N. Y. 137, 143; *Atlas Bank v. Nahant Bank,* 23 Pick.
480; *Spear v. Grant,* 16 Mass. 9, 15; *Coleman v. White,*
14 Wis. 700, 702 (80 Am. Dec. 797); *Palmer v. Bank of
Zumbrota,* 67 N. W. 893; *Story v. Furman,* 25 N. Y.
214; *Wood v. Dummer,* 3 Mason, 308; *West v. Randall,*
2 Mason, 181, 190; 3 Thompson, Corporations, §§ 3492,
3515.

(2d)   The right of action is barred by failure to pre-
sent a claim against the estate within the year limited to
creditors, under Bal. Code, § 6228.   The short statute
of "non-claim" applies to claims upon a stockholder's
"double" liability.   2 Thompson, Corporations, § 2023;
*Garesche v. Lewis,* 93 Mo. 197 (6 S. W. 54); *New Eng-
land Commercial Bank v. Stockholders,* 6 R. I. 154 (75
Am. Dec. 688); *Sayles v. Bates,* 15 R. I. 342 (5 Atl.
497); *Davidson v. Rankin,* 34 Cal. 503; *Grand Rapids
Sav. Bank v. Warren,* 52 Mich. 557 (18 N. W. 356);
*Nolan v. Hazen,* 44 Minn. 478 (47 N. W. 155); *Hospes*

*v. Northwestern Mfg. Co.,* 48 Minn. 174 (50 N. W. 1117, 31 Am. St. Rep. 637, 15 L. R. A. 470).

The intimation of *Neis v. Farquharson,* 9 Wash. 508 (decided upon other grounds), that the presentation of a claim, during pendency of an equitable suit for an unliquidated amount, under Bal. Code, § 6237, would be an "idle ceremony" has no application to the statute of non-claim (§ 6228), and the doctrine of that case ought not to be extended. The presentation of a claim is indispensible to the recovery of a money judgment against the estate, even in suits for equitable relief. *Scammon v. Ward,* 1 Wash. 179 (23 Pac. 439); *Reed v. Miller,* 1 Wash. 428 (25 Pac. 334); *Casey v. Ault,* 4 Wash. 167 (29 Pac. 1048); *Allen v. Moer,* 16 Iowa, 307; *Fisher's Ex'r v. Mossman,* 11 Ohio. St. 42; *Willard v. Van Leeuwen,* 56 Mich. 15 (22 N. W. 185); *McClure v. Owens,* 32 Ark. 443; *Richardson v. Hickman,* 32 Ark. 407; *Fallon v. Butler,* 21 Cal. 24 (81 Am. Dec. 140); *Clark v. Davis,* 32 Mich. 154; *Mahone v. Haddock,* 44 Ala. 92; *Watt v. White,* 46 Tex. 338; *Willis v. Farley,* 24 Cal. 498; *Pitte v. Shipley,* 46 Cal. 158; *Grafton Bank v. Doe,* 19 Vt. 463 (47 Am. Dec. 697); *Mutual Benefit Life Ins. Co. v. Howell,* 32 N. J. Eq. 146; *O'Doherty v. Toole,* 15 Pac. 28.

And the short statute also applies to unliquidated claims. *White v. Fitzgerald,* 19 Wis. 480; *Lannon v. Hackett,* 49 Wis. 261; *Fern v. Leuthold,* 39 N. W. 399; *Falkner v. Hendy,* 107 Cal. 49 (40 Pac. 21); *Whitlock's Estate,* 1 Tuck. (N. Y. Surr.) 491; *Lathrop v. Bampton,* 31 Cal. 17 (89 Am. Dec. 141); *Ferrall v. Irvine,* 12 Iowa, 52; *Glass v. Woolf's Adm'r.,* 82 Ala. 281 (3 South. 11); *Zachary v. Chambers,* 1 Ore. 321; *Ellissen v. Halleck,* 6 Cal. 386; *Walker v. Cheever,* 39 N. H. 420; *Hoyt v. Bonnett,* 58 Barb. 529; *Williams v. Purdy,* 6 Paige Ch. 166; *Batchelder v. Batchelder,* 20 Wis. 452.

*Walter M. Harvey* and *John Leo,* for respondent:

The cause of action in this case is of a purely equitable nature and one which the receiver must go into a court of equity to enforce. It has always been of an uncertain and contingent character. It could not be ascertained within the year allowed by law for the presentation of claims what, if anything, would be required to be paid by any of the stockholders. They were only liable for a *pro rata* share after the assets were exhausted and a deficiency had been determined to exist. It was impossible for the receiver, or any one else, to make the affidavit required by the statute as to the amount of the claim, or that anything whatever was justly due, as required by law. Where a demand is merely for equitable relief, it is not a "claim" within the meaning of the probate act. *Neis v. Farquharson,* 9 Wash. 517; 2 Woerner, Administration, § 386; *Evans v. Hardeman,* 15 Tex. 480; *Toulouse v. Burkett,* 2 Idaho, 170; *Thompson v. Reno Savings Bank,* 19 Nev. 242 (3 Am. St. Rep. 883).

The stockholders' liability for the debts of the corporation to the extent of the unpaid subscriptions or the double liability is contingent until the assets of the corporation are distributed. *National German-American Bank v. Tapley,* 57 N. W. 1065; *Wickham v. Hull,* 71 N. W. 352; *Hospes v. Northwestern Mfg. Co.,* 48 Minn. 174 (31 Am. St. Rep. 637); *Robinett v. Starling,* 72 Miss. 652; *Garesche v. Lewis,* 15 Mo. App. 565.

Under statutes merely requiring creditors to present their claims and demands against the estate, without any express provision as to contingent claims, the holder of a contingent claim is not required to file the same before it becomes absolute. *Payson v. Hadduck,* 8 Biss. 293; *Walker v. Byers,* 14 Ark. 246; *Hendricks v. Keesee,* 32 Ark. 714; *May v. Vann,* 15 Fla. 553; *Dugger v. Oglesby,* 99 Ill. 405; *Suppiger v. Gruaz,* 137 Ill. 216; *Dunnigan v. Stevens,* 19 Ill. App. 310; *Blair v. Allen,* 55 Ind. 409;

*Security Fire Ins. Co. v. Hansen,* 73 N. W. 596; *Harding v. Smith,* 11 Pick. 478; *Bullard v. Moor,* 158 Mass. 418; *Harris v. Hutcheson,* 65 Miss. 9; *Jones. v. Carrollton Bank,* 71 Miss. 1023; *Morgan v. Gibson,* 42 Mo. App. 234; *State v. Tittmann,* 134 Mo. 162; *Caplinger v. Vaden,* 5 Humph. 629; *Mann v. Everts,* 64 Wis. 372.

The opinion of the court was delivered by

FULLERTON, J.—The Bank of Puyallup was organized as a banking corporation under the laws of the state of Washington on the 10th day of September, 1890, with a capital stock of $100,000, divided into one thousand shares of the par value of $100 each. On the 26th day of May, 1893, the bank closed its doors and discontinued business as a going concern, and on the 7th day of June, 1893, in an action brought in the superior court of Pierce county for that purpose, was by that court adjudged insolvent, and the respondent was appointed receiver of its property, for the purpose of winding up its affairs and distributing its property among its creditors. The receiver took possession of the property of the bank and, under the direction of the court appointing him, reduced its property to cash, and from time to time distributed the same *pro rata* among the creditors according to the amounts of their respective claims. The last of this property (so the court found on the trial) was converted into cash on the 5th day of August, 1897; and until that date it was not ascertained or determined the exact amount there would remain due to the creditors after the property of the bank in the hands of the receiver should be applied thereon. The amount so due was found to be $39,095.52.

At the time of the organization of the Bank of Puyallup one J. P. Stewart subscribed for, and there was issued to him, ten shares of its capital stock. Stewart continued to be a stockholder therein during the life of the corporation,

and owned such shares at the time the bank was adjudged insolvent. He died testate on the 13th day of January, 1895, leaving estate in the county of Pierce, state of Washington, and in his will named the appellants as executrix and executor thereof, who duly qualified as such. The appellants, immediately upon their qualification, caused the statutory notice to be given, requiring all persons having claims against the estate of the decedent to present them within one year from the date of the first publication, which was made on the 8th day of February, 1895. No claim for the liability sued on in this action was presented to the executrix and executor within the year limited for the presentation of claims, nor until the 25th day of September, 1897, at which time the receiver presented a verified written demand for the amount claimed to be assessable against the shares of stock owned by J. P. Stewart under the superadded liability provided for in the constitution (art. 12, § 11). The claim was rejected, and the receiver was on the 27th day of the same month ordered by the court to prosecute this action to recover the amount claimed to be due. The action was begun on the 15th day of October, 1897, and resulted in a judgment against the executrix and executor for the sum of $3,909.55, and interest from the date of the commencement of the action. From that judgment this appeal is taken.

While many errors are assigned for reversal, the principal contention is over the statute of limitations. It is contended by the appellants that the action is barred, because of the failure to present the claim within the year limited by law in which to present claims against the estates of decedents. As the view we have taken of this question is decisive of the case, it is unnecessary to discuss the other questions raised.

The statute (§ 6226, Ballinger's Code) enacts, that every executor or administrator shall, immediately after his appointment, cause to be published in some newspaper printed in the county, a notice to the creditors of the deceased, requiring all persons having claims against the deceased to present them, with the necessary vouchers, within one year after the date of such notice, at a place to be specified in the notice. By § 6228, it is provided,

"If a claim be not presented within one year after the first publication of the notice, it shall be barred."

And by § 6235,

"No holder of any claim against an estate shall maintain an action thereon, unless the claim shall have been first presented to the executor or administrator."

The respondent contends that the liability sued on in this action is not a claim, within the meaning of the provisions of the statute above cited. He argues that the statute refers only to legal demands, and was not intended to apply to a liability of a purely equitable nature, which the receiver must go into a court of equity to enforce; that the claim sued on was, at the time the statute was running, of an uncertain and contingent character, and it could not be ascertained during that time what, if anything, would be required to be paid; that the presentation of a claim under such circumstances would be an idle ceremony, and the law does not require a vain and useless thing. He argues further that this construction is supported by that section of the statute (6229) which requires that "every claim presented to the administrator shall be supported by the affidavit of the claimant that the amount is justly due, that no payments have been made thereon, and that there are no offsets to the same to the knowledge of the claimant," for the reason that this affidavit could not have been made to the claim sued on in this action during the time the statute was running.

Were the sections of the statutes cited all that appeared on the subject of claims, there would be much force to the contention made. But the statute refers, in terms, to contingent claims. By § 6338 it is provided,

"If there be any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part thereof as the holder would be entitled to if the claim were due, established, or absolute, shall be paid into the court, where it shall remain, to be paid over to the party when he shall become entitled thereto; or if he fail to establish his claim, to be paid over or distributed, as the circumstances of the case may require."

It also refers in terms to claims not due. By § 6245 it is provided that the executor or administrator is required at stated times to present a statement of claims in which he shall designate "the nature of each claim, *when it did or will become due,* and whether it was allowed or rejected by him," and a special provision is made for the payment of claims not due when the administration is ready to be closed (6338). The word claim, in its ordinary use, has a broad meaning, and has been construed as synonymous with cause of action. *Northwestern & P. H. Bank v. State,* 18 Wash. 73 (50 Pac. 586); *Minick v. Troy,* 83 N. Y. 514. In *Gray v. Palmer,* 9 Cal. 636, it is said:

"The word *claim* is certainly a very broad term, when used in certain connections, and in reference to certain matters. Lord Coke truly says, that 'the word *demand* is the largest word known to the law, save, only, *claim.'* "

It is also a primary rule of statutory construction that all of the parts of an act relating to the same subject shall be construed together, and not each by itself. The object and general intent must be sought for, and one provision may be qualified by another, though it does not profess to have that effect. And, when the object and general intent of a statute is ascertained, general words may be restrained

to it, and those of narrower import may be expanded to effectuate that intent. As was said by Mr. Justice FIELD in the *Eureka Case,* 4 Sawy. 302,

"Instances without number exist where the meaning of words in a statute has been enlarged or restricted and qualified to carry out the intention of the legislature. The inquiry, where any uncertainty exists, always is as to what the legislature intended, and when that is ascertained it controls."

It is unreasonable to suppose that the legislature would have made provision for the payment of contingent claims by the executor or administrator, did it not also intend to provide that such claims should be presented for payment. And if we are to give effect to all these provisions of the statute, and the general rules of statutory construction applicable thereto, it is obvious that the word "claim" must have a uniform sense throughout the statute and be held to include every species of liability which the executor or administrator can be called on to pay, or to provide for the payment of, out of the general fund belonging to the estate. It is equally obvious that the word "due" was not used in the sense of "mature," in the statute prescribing the form of affidavit, but was intended to apply to all claims, whether due, to become due, or contingent. The object of this provision is to secure good faith in their presentation, and is satisfied by an affidavit stating the facts to be true out of which the liability is claimed to arise. It follows from this that the claim sued on in this action was barred prior to the commencement of the action, because not presented to the executrix and executor for allowance or rejection within the year limited for the presentation of claims.

But counsel say, "What claim could the receiver present? He had no claim whatever on the last day for presenting claims. But suppose he had. He could not comply

with one essential element of the statute. The amount could not be stated within thousands of dollars. It could not be said that anything was justly due or would become due at any particular time, or at all." Answering a like objection made in a similar case, the supreme court of California, in *Verdier v. Roach,* 96 Cal. 467 (31 Pac. 554), say,

"It is further contended for appellants that they had no existing claim against Blythe's estate which could have been presented during the period of ten months after publication of notice to creditors, since Blythe's liability to indemnify them did not become absolute or due until the contingency happened, two years after that period had expired.

"It is true that their claim was neither absolute nor due during that period, but it was, nevertheless, an existing valuable claim against the estate of Blythe, assignable, devisable, and descendible (*Kenyon v. See,* 94 N. Y. 563), and also detrimental to Blythe's estate. It consisted of a then existing obligation arising from an express covenant of the decedent to indemnify the appellants for one half of all damages they might suffer from water, etc., during the term of the lease. It was substantially a covenant of insurance.

"Counsel ask, What would have been the effect of an allowance of this claim by the administrator? A sufficient answer to this is, that an allowance of the claim would have admitted and established the validity of the obligation, and would have entitled it 'to be filed in court and ranked among the acknowledged debts of the estate, to be paid in due course of administration' (Sec. 1497), 'as the circumstances of the estate required.' (Sec. 1647.) If still contingent at the time of the settlement of accounts, 'the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established, or absolute, must be paid into the court, and there remain, to be paid over to the party when he becomes entitled thereto.' (Secs. 1648, 1650, 1651.)

"It is assumed by counsel for appellants that before the contingency happens the obligation is not a debt; and

hence they conclude that it could not have been 'ranked among the acknowledged debts of the estate.'

" Conceding, for the sake of the argument, that a contingent claim is not a technical legal debt, it does not follow that it mày not be ranked *among* debts. The first two examples given by Mr. Webster of authorized uses of the verb 'to rank' are as follows: 'Poets were *ranked* in the class of philosophers'; 'Heresy is *ranked* with idolatry and witchcraft.' The first does not necessarily mean nor imply that poets are philosophers; nor the second that heresy is idolatry or witchcraft. Nor does the requirement that an allowed claim shall be ranked *among* debts exclude from the ranks all claims which may not properly be termed legal debts. The statute plainly requires contingent claims to be presented *for allowance;* and that all allowed claims shall be filed in court and ranked *among* the acknowledged (allowed) debts, whether all such' allowed claims are technical debts or not."

The counterpart of the sections found in the California Code cited by the court in the foregoing extract are found in our own Code. See, in addition to those above cited, § 6231.

It is said that this court, in *Neis v. Farquharson,* 9 Wash. 517 (37 Pac. 697), held a contrary doctrine. It is true it was said in that case that it is questionable whether a claim of this character was within the meaning of the statute requiring claims to be presented to the executor or administrator on pain of being barred if not so presented; but that point was not necessary to a decision of the case, and the decision seems to have been put upon an entirely different ground, viz., that the question could not be raised for the first time in this court. The principle, too, appears not to be in accord with some of the earlier decisions of this court. *Scammon v. Ward,* 1 Wash. 179 (23 Pac. 439); *Reed v. Miller,* 1 Wash. 426 (25 Pac. 334); *Casey v. Ault,* 4 Wash. 167 (29 Pac. 1048). But, however this may be, the case will be overruled in so far as

the point urged conflicts with the conclusion reached in the present case. The judgment of the lower court is reversed and remanded, with instructions to dismiss the action.

GORDON, C. J., and DUNBAR and REAVIS, JJ., concur.